FUGGI LAW FIRM, P.C.
ROBERT R. FUGGI, JR., ESQ.
ATTORNEY ID: 037581992
47 MAIN STREET
P.O. BOX 1808
TOMS RIVER NJ 08753
T: 732-240-9095
F: 732-240-9072
ATTORNEYS FOR PLAINTIFF

| Marisa Powell<br><br>Plaintiff,<br><br>v.<br><br>Verizon, Brendan McHale, John Does (1-20) (Fictitious Individuals), ABC CORPORATIONS 1-6 (fictitious names)<br><br>Defendant(s). | UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY<br><br>Civil Action<br><br>Case No.: _____<br><br>COMPLAINT AND DEMAND FOR JURY TRIAL; DESIGNATION OF TRIAL COUNSEL; PLAINTIFF'S DEMAND FOR DAMAGES; DEMAND FOR ANSWERS TO INTERROGATORIES; AND NOTICE TO PRODUCE |

Marisa Powell (hereinafter "Plaintiff") resides in Mount Bethel, Pennsylvania. By way of Complaint through the undersigned attorneys, Plaintiff hereby states the following:

### PARTIES

Marisa Powell (at times referred to as the Plaintiff) resides in Mount Bethel, PA 18343 and is an employee of Verizon Inc., working in the New Jersey office locations.

1. At all times material, Defendant Verizon Inc. was and continues to be a New York corporation, authorized to conduct business and conducting business in the State of New Jersey, with its

principal place of business located at 1 Verizon Way, Basking Ridge, NJ 07920.

2. At all times material, Defendant McHale is and continues to be an employee of Verizon and coworker of Plaintiff.

3. At all times material, Plaintiff Powell and Defendant Mchale were and are, employees of Defendant Verizon.

4. At all times material Defendants John Does (1-20), ABC CORPORATIONS 1-6 (fictitious names), is a fictitious name of an entity believed to have harassed Marisa Powell.

## JURISDICTION AND VENUE

1. Plaintiff brings her complaint under federal diversity jurisdiction, 28 U.S.C. 1332, as the parties are completely diverse in citizenship and the amount in controversy exceeds $75,000.

2. This Court has jurisdiction of Plaintiffs' federal law claims pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.

3. This Court has jurisdiction of Plaintiffs' federal law claims pursuant to Title VII of the Civil Rights Act of 1964, as amended, which makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such

2

individual's race, color, religion, or national origin; or (2) to limit, segregate, or classify her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, or national origin." 42 U.S.C. § 2000e-2(a).

4. This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution. Plaintiffs' state law claims share all common operative facts with their federal law claims, and the parties are identical. Resolving Plaintiffs' federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

5. Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintain facilities and business operations in this District 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

## STATEMENT OF FACTS

1. Plaintiff Marisa Powell, born September 2, 1968 is a female of African-American descent who currently resides in Mount Bethel, Pennsylvania.

3

2. Plaintiff has been an employee of Verizon since 1989 and has given nearly three decades of hard work to the company while rising through the ranks. She currently works at the Madison Central location as a Network Tech.

3. Plaintiff has worked at multiple Verizon offices throughout her extensive career at Verizon. The facts of this case commence with her time working at the Morristown Central Office and conclude at the Madison Central Office which is where Plaintiff is currently assigned.

4. In June, 2015 Plaintiff suffered her first harassment at the hands of her co-worker Brendan McHale.

5. Defendant McHale began stalking Plaintiff while she was working. He would constantly go out of his way to find her and watch her. He would routinely come up behind her and yell at her. He would also hide and lock away her equipment without her knowledge or consent.

6. This harassment was immediately reported numerous times to supervisors and union representatives, however, neither took any action against Defendant McHale.

7. Finally, after Plaintiff had continued to complain of Defendant McHale's stalking behavior, the Verizon manager and union representatives scheduled a meeting. Before the meeting the representatives told Mrs. Powell not to say "anything that will get her in trouble or fired." It is unclear what this meant.

4

8. Once in the meeting Plaintiff told her manager that she simply wanted to be able to come to work each day without feeling afraid of or threatened by coworkers.

9. After the meeting the Plaintiff overheard her union representatives tell the manager that she was simply maneuvering to be moved closer to home; however, this was not true. Plaintiff never made that assertion to anyone and it was not the reason she filed a complaint on Defendant McHale.

10. Soon after the meeting regarding Defendant McHale took place, Plaintiff was randomly told to report to Verizon internal security where she was interrogated. She had been accused of taking photos of her co-workers. However, this was untrue.

11. A few days after being unlawfully searched, harassed, and physically attacked by security, Plaintiff was called and told not to tell anyone about what had happened regarding her interrogation at the hands of Verizon security.

12. After this ordeal, Plaintiff, through an Employee Assistance Program (EAP), was out on leave for nine (9) months before returning to work. An employee assistance program (EAP) is a work-based intervention program designed to assist employees in resolving problems that may be adversely affecting the employee's performance. Plaintiff took the leave due to the documented medical condition she had developed over the constant stalking by Defendant McHale.

13. Upon her return to work, Plaintiff was refused any special accommodation, against the American with Disabilities Act Regulations (ADA), for her documented medical condition. She was also reassigned to the Madison office.

14. However, the Madison office was still within the area in which Defendant Brendan McHale covered. She was still regularly forced to see and interact with him in Madison.

15. Plaintiff was assigned in Madison to the switch room, where her laptop was secured to the desk. She was told by her supervisors that she was not permitted to leave the room while at work. This created a false imprisonment setting.

16. During her very first week back from disability, Verizon had Brendan McHale cover the Madison Office. Plaintiff was given no advance notice or knowledge that he would be there. When Plaintiff brought up the stalking issue to her supervisors she was simply told that Verizon could not protect her and to call 911 if she felt she was in danger.

17. In August of 2017 while at work in the Madison Office, Plaintiff found a picture of a large breasted, naked, white woman posted in her desk drawer by a coworker with the message "Every Man's Christmas Wish." (**Exhibit B**)

18. After a period of time working in Madison, Plaintiff was required to leave due to back injuries, however she returned to work.

19. After returning from her second injury she requested a transfer to an office where she would have no further contact with Defendant McHale. This request was ignored by management and Plaintiff returned to work in the Madison Office and was now also expected to cover Morristown when necessary.

20. On the morning of February 14, 2019, Plaintiff, Marisa Powell was directed to be in the Madison, New Jersey office for her normal work at Verizon.

21. That morning the Plaintiff entered her workspace to find that there was a noose hanging above her desk crafted from cable wires. **(EXHIBIT A)**

22. Plaintiff, as an African-American was immediately horrified that this happened in her work place.

23. On the morning of February 14th 2019 Defendants John Does (1-20), fashioned a noose out of wires and hung the aforementioned noose right next to Plaintiffs desk for her to see that morning upon her arrival.

24. Defendants, were fully aware of the fact that Plaintiff is an African-American woman, the history of African-Americans and symbols such as nooses, and the harm that would come to the plaintiff by hanging this noose for her to see.

25. The mental abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe

emotional distress, nervousness, night sweats and mental anguish and other physical and psychological injuries.

26. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate conduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

27. The misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

28. This noose was made of red, white, green and blue wire, which matches none of the other wires in the office. The wire noose was specifically fashioned and tied around a support beam, not connected to any other wires and/or equipment, and it was tied off at the end clearly showing that it was purposefully made to resemble a noose. There was no reason for these wires to be hanging in this area except to incite fear and intimidate the Plaintiff.

29. Plaintiff immediately took a picture of the noose and sent the picture to two (2) other people asking them what they think it is. Both people who viewed the hanging noose responded that this was a noose hanging next to her desk.

30. Plaintiff then sent emails to her Union Rep. Chuck Webber, Supervisor Bryan Curty, Manager Karen Lamore, and Director Orlando Figueroa.

31. Plaintiff did not receive any response from any individual until she finally called her supervisor and asked him if he saw her email, to which he responded no because he was driving and stated he was on his way to the Madison office.

32. John Miller, Ex. Board of Union Ibew of local 827, eventually called and apologized for what happened to Plaintiff.

33. Plaintiff sent an email and a text to Yolanda Stancil, Regional President for MidAtlantic North, about the noose, accompanied with pictures.

34. An hour after Plaintiffs call, her supervisor, Bryan Curty, arrived and began calling for her.

35. In fear of the noose and what could have happened while she was alone, Plaintiff was hiding away from her other coworkers.

36. Supervisor Curty called for the Plaintiff to find out what happened and she reported to him.

37. Curty asked the Plaintiff "Whats up? Whats going on?" to which the Plaintiff replied "This!" while pointing at the noose.

38. Curty then looked past the noose and began asking "What?" and "Where?" acting as if nothing was hanging in front of him and/or he couldn't see the noose. Not realizing the significance of a noose to an African American.

39. Curty finally acknowledged the noose, after the urging of Plaintiff, by saying *"Oh this?"* and claiming "It could be, but then maybe not" in regards to the Plaintiff telling him it was a noose. To which the Plaintiff stated "It has no reason for being there!"

40. This lack of empathy and understanding by Verizon supervisors and representatives for how the Plaintiff felt in this situation as the only African-American woman in the office caused her great emotional pain and she began to cry and walked out of the room.

41. Plaintiff went back to hide in a quiet area to continue crying until Mr. Curty approached Plaintiff and told her he cut down the noose.

42. He told the Plaintiff she "looked upset" and that Human Resources (H.R.) was aware of the situation. Curty told the Plaintiff, to cover himself and Verizon after the fact, that if he saw someone doing this he would "Fire them on the spot, or give them ten days."

43. Curty again told Plaintiff she looked upset and then went to call Verizon security. Upon his return, he asked if Plaintiff wished for him to stay, which the Plaintiff did not respond, and then if she wanted the number to the E.A.P. to which the Plaintiff shook her head yes.

44. Curty emailed her the number but Plaintiff was crying and shaking so much from the chain of events that transpired that she was unable to access the computer and he was required to write the number.

45. Curty again told Plaintiff how upset she looked and asked if she wanted to go home.

46. Plaintiff shook her head yes and she and Curty left the building. Once outside, Curty asked Plaintiff to text him when she made it home.

47. As of the filing of the complaint, Plaintiff has not had any additional contact from Verizon regarding the incident.

48. Currently, the Morris County Prosecutor's Office is conducting a hate crime investigation of the incident.

## COUNT ONE
### Race-Based Discrimination in Violation of
### Title VII of the Civil Rights Act of 1964 42 U.S.C. § 2000e-2(a)

1. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

2. Title VII of the Civil Rights Act of 1964, *as* amended, makes it unlawful for an employer, "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to her compensation, terms, conditions, or privileges of employment, because of such

11

individual's race, color, religion, race, or national origin; or (2) to limit, segregate, or classify her employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect her status as an employee, because of such individual's race, color, religion, or national origin." 42 U.S.C. § 2000e-2(a).

3. Defendants discriminated against Plaintiff by treating her differently from her non-African-American coworkers, including allowing disparate treatment on the basis of race, ethnic harassment and failing to investigate discriminatory practices.

4. Plaintiff's race was the determining factor and/or a motivating factor in Defendants' actions.

5. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants' actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

6. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on her race.

7. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

    **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

<u>COUNT TWO</u>
**Race-Based Discrimination in Violation of
New Jersey Law Against Discrimination
N.J.S.A. § 10:5-12**

8. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

9. New Jersey's Law Against Discrimination makes it unlawful for an employer to discriminate against an individual "in compensation or in terms, conditions or privileges of employment" because of race.

10. Defendants discriminated against Plaintiff by treating her differently from her non-African-American, because of their race.

11. Plaintiff's race was the determining factor and/or a motivating factor in Defendants' actions toward her.

12. As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic damages to be proven at trial. As a result of Defendants'

actions, Plaintiff has suffered emotional distress, resulting in damages in an amount to be proven at trial. Plaintiff further seeks compensatory and punitive damages and all other injunctive, declaratory, and monetary relief available for discrimination at trial.

13. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

14. Plaintiff is entitled to reasonable attorneys' fees and costs of suit.

   **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.


### COUNT THREE
**Race-Based Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964, *as amended*, 42 U.S.C. § 2000e-2(a)**

15. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

16. Plaintiff was subjected to harassment by Defendants' agents and employees, including Brendan McHale, because of her race as an African American.

17.   Defendant's agents and employee's conduct was not welcomed by Plaintiff.

18.   Defendant's agent and employee conduct was undertaken because of Plaintiff' race as an African-American.

19.   The conduct was so severe or pervasive that reasonable persons in Plaintiff's positions would find their work environment to be hostile or abusive.

20.   Plaintiff believes their work environment to be hostile or abusive as a result of Defendants' agent and employee conduct.

21.   Management level employees knew, or should have known, of the abusive conduct. Plaintiff provided management level personnel, including managers, supervisors, and union representatives with information sufficient to raise a probability of race-based harassment in the mind of a reasonable employer.

22.   Moreover, the harassment was so pervasive and open that a reasonable employer would have had to have been aware of it. Indeed, management level employees were themselves complicit in the abusive conduct.

23.   Defendants did not exercise reasonable care to prevent harassment in the workplace on the basis of race, and did not exercise reasonable care to promptly correct any harassing behavior that did occur.

24.   As a direct, legal and proximate result of the discrimination, Plaintiff has sustained, and will continue to sustain, economic

and emotional injuries, resulting in damages in an amount to be proven at trial.

25. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff's right to be free from discrimination based on race.

26. Plaintiff is entitled to their reasonable attorneys' fees and costs of suit.

WHEREFORE, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

COUNT FOUR
Retaliation in Violation of
Title VII of the Civil Rights Act of 1964, *as amended*,
42 U.S.C. § 2000e-3(a)

27. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

28. Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

29.   Plaintiff made informal and formal complaints to Defendants' agents and employees opposing Defendants' unlawful, discriminatory employment practices based on her race.

30.   As a result of Plaintiff's complaints, Defendants' agents and employees took materially adverse actions against Plaintiff, including, but not limited to, hanging a noose in her office.

31.   Defendants' adverse actions constituted retaliatory workplace harassment.

32.   Defendants' retaliatory actions were sufficient to deter a reasonable person from engaging in protected activity under Title VII.

33.   As a direct, legal and proximate result of Defendants' retaliation, Plaintiff has sustained, and will continue to sustain, economic and emotional injuries, resulting in damages in an amount to be proven at trial.

34.   Plaintiff is entitled to their reasonable attorneys' fees and costs of suit.

   **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT FIVE
### SEXUAL HARASSMENT/ASSAULT

17

35. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

36. At all times relevant, assailant(s) John Does (1-20) is/was an employee at Verizon who was present on or around the Morristown office.

37. On at least one occasions, assailant John Does (1-20) engaged in the unlawful sexual harassment and assault of the plaintiff without her consent.

38. Defendants placed sexually explicit materials, in the form of a nude photograph, in Plaintiffs desk for her to find for the purpose of sexually and emotionally harassing her.

39. All Defendants acted with the purposeful, knowing, reckless, negligent intent to cause harm and/or offensive contact to the Plaintiff and thereby put her in imminent apprehension and fear for her well-being.

40. All Defendants' actions would be offensive to a person with a reasonable sense of personal dignity.

41. Plaintiff did not and could not consent to the acts.

42. Defendants' actions were outrageous, and constituted a wanton and reckless disregard to Plaintiff's health, safety, and well-being.

43. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

44. All defendants are responsible for sexual assault/harassment of Plaintiff. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the sexual assault/harassment of the plaintiff.

   WHEREFORE, Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and

her unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant to take effective steps to prevent race-based discrimination and harassment, sex-based discrimination and harassment, including sexual assault/harassment, in its education programs; fully investigate conduct that may constitute race-based harassment and/or sexual assault/harassment; appropriately respond to all conduct that may constitute race-based harassment and/or sexual assault/harassment; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT SIX
### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT (ADA)

45. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

46. At all times relevant, Defendant Verizon was the employer of Plaintiff Powell.

47. Defendant Verizon failed to provide proper and/or necessary accommodations to Plaintiff based on her documented medical condition despite her requests.

48. She developed these disabilities as a direct result of the stalking and harassment conducted by her coworker Defendant McHale, an employee/agent of Defendant Verizon.

49. The ADA clearly includes mental and psychological disabilities as under the purview of the law's intent. "Under the ADA, the term "disability" means: "(a) A physical or mental impairment that substantially limits one or more of the major life activities of [an] individual."

50. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

51. All defendants are responsible for failure to accommodate Plaintiff under the ADA. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT SEVEN
## FALSE IMPRISONMENT

52. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

53. At all times relevant, Defendant Verizon was the employer of Plaintiff Powell.

54. After receiving notice of Plaintiffs harassment and abuse at the hands of the Defendants John Does (1-20) and Brendan McHale, Defendant Verizon put Plaintiff in a room all by herself with explicit orders not to leave and if she felt threatened to "call the police".

22

55. Plaintiff was not only unprotected from the threats which troubled her before but was now trapped in a room, unsupervised and unguarded, just waiting for further torment.

56. The circumstances under which defendant restrained the Plaintiff exposed her to risk of serious bodily injury.

57. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

58. All defendants are responsible for false imprisonment of Plaintiff. All defendants acted carelessly, recklessly,

negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing the false imprisonment of the plaintiff.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

**COUNT EIGHT**
**INVASION OF PRIVACY**

59. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

60. Defendants intentionally intruded upon the plaintiff physically or otherwise, upon the solitude or seclusion of her private affairs or concerns, which was highly offensive to a reasonable person. Bisbee v. John C. Conover Agency, Inc., 186 N.J. Super. 335, 339 (1982) (quoting Restatement (Second) of Torts, supra, § 652B).

61. Plaintiff possessed a reasonable expectation of privacy inside of her office at Verizon in Madison NJ.

62. Defendants violated the Plaintiff's reasonable expectation of privacy by entering into the Plaintiff's office while she was not there and constructing a noose to hang above her desk.

24

63. Defendant Verizon failed to provide reasonable and safe office accommodations for the Plaintiff Marisa Powell while working in their Madison base.

64. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

65. All defendants are responsible for Plaintiff's invasion of privacy. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be

caused great harm to plaintiff by allowing the invasion of the plaintiff's privacy.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

**COUNT NINE**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**

66. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

67. At all times relevant, Defendant John Does (1-20), are employees of Verizon.

68. On the morning of February 14th 2019 Defendants John Does (1-20), fashioned a noose out of wires and hung the aforementioned noose right next to Plaintiffs desk for her to see that morning upon her arrival.

69. Defendants, were fully aware of the fact that Plaintiff is an African-American woman, the history of African-Americans and symbols such as nooses, and the harm that would come to the plaintiff by hanging this noose for her to see.

70. The mental abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe

emotional distress, nervousness, night sweats and mental anguish and other physical and psychological injuries.

71. Defendants acted either intentionally or recklessly and knew or should have known that the inappropriate conduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

72. The misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

73. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and

treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

74. All defendants are responsible for Plaintiff's intentional infliction of emotional distress. All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

   **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT TEN
### NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

75. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

76. At all times relevant, Defendant Verizon, was the employer of John Does (1-20).

77. Defendants, by duress and intimidation, caused Plaintiff emotional distress through psychological harassment by hanging a noose above Plaintiff's desk and placing a picture of a large breast, naked, white woman in Plaintiff's desk.

28

78. The mental abuse of Plaintiff by defendants proximately caused the plaintiff to suffer extreme humiliation and anxiety, severe emotional distress, nervousness, night sweats and mental anguish and other physical and psychological injuries.

79. Defendants acted carelessly, negligently, or recklessly and knew or should have known that the inappropriate conduct in their relationships with Plaintiff would result in serious emotional distress to Plaintiff beyond what a normal person could be expected to endure.

80. The misconduct of defendants alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

81. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily

activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

82. All defendants are responsible for Plaintiff's intentional infliction of emotional distress.  All defendants acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff through intentional infliction of emotional distress.

   **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT ELEVEN
## NEGLIGENT HIRING

83. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

84. Defendant Verizon, entrusted and hired Defendants John Does (1-20) who harassed Plaintiff.

85. Defendant Verizon, as an employer, at the time of hiring employees, Defendant John Does (1-20), had reason to believe, or could have determined by reasonable investigation, that the

employees were dangerous and/or ill-equipped to handle or perform their duties and hired them anyway, which proximately caused injury to Marisa Powell. DiCosala v. Kay, 91 N.J. 159, 173-74 (1982).

86. Defendant Verizon as an employer knew or had reason to know of the particular unfitness, discriminatory practices, incompetence or dangerous attributes of the employees, Defendants John Does (1-20).

87. Defendant Verizon, as an employer could have reasonably foreseen that hiring a person with the attributes of the employees, John Does (1-20), created a risk of harm to others, whether on or off the premises.

88. Defendants John Does (1-20), showed a risk of harm that was foreseeable and carelessly, negligently, and recklessly disregarded.

89. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by hiring the Defendants John Does (1-20).

90. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe

31

embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

    **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

**COUNT TWELVE**
**NEGLIGENT SUPERVISION**

91. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

92. Defendants John Does (1-20) and Defendant McHale were hired by Defendant Verizon.

93. By hiring the Defendants John Does (1-20) and Brendan McHale the Defendant Verizon accepted the responsibility of supervising these employees.

94. Defendants Verizon, the employees, managers, training staff, and/or supervisors failed to properly monitor the Defendant Employees. Based on external factors and the entirety of the circumstances, a reasonable person would expect a higher level of supervision.

95. Plaintiff sustained an injury, which was a direct result of the failure to supervise.

96. Plaintiff's injury was foreseeable. A reasonable supervisor could have seen this incident coming and prevented it from happening and/or would have reported the abuse once gaining knowledge of it.

97. If there was proper supervision, plaintiff would not have been harassed, intimidated or threatened by Defendant John Does (1-20) or Defendant McHale. Rather, Defendant John Does (1-20) and Defendant McHale were granted unfettered access to Plaintiffs office space, which allowed them to abuse Marisa Powell.

98. Had there been proper supervision the incident would have been avoided by management taking action upon the first report of harassment.

99. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical

injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

100. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by failing to supervise their employees the Defendants John Does (1-20) and Defendant McHale.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT THIRTEEN
## NEGLIGENT RETENTION

101.    Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

102.    Defendant McHale was hired by Defendant Verizon.

103.    Defendant Verizon learned of Defendant McHale's dangerous propensities.

104.    Defendant Verizon negligently retained Defendant McHale after learning of his dangerous propensities after he was hired.

105.    Defendant Verizon did not take appropriate action to prevent harm to others, such as the plaintiff.

106.    As a result, Verizon facilitated Brendan McHale's predatory behavior.

107.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

35

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities.  Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

108.   Defendant   Verizon   acted   carelessly,   recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employee the Defendant   Brendan   McHale   after   learning   of   his   dangerous propensities.

**WHEREFORE**,   Plaintiff   hereby   demands   judgment   against Defendants   for   compensatory   and   punitive   damages,   interest, costs   of   suit,   attorneys'   fees   and   such   other   relief   as   the Court or Jury may deem proper.

## COUNT FOURTEEN
### VICARIOUS LIABILITY

109.   Plaintiff   repeats   and   reiterates   all   of   the   allegations contained   in   the   previous   counts   and/or   paragraphs   as   if   set forth at length herein.

110.   Defendants John Does (1-20) and Brendan McHale were hired by Defendant Verizon.

36

111.    Defendant Verizon as an employer, hired Defendants John Does (1-20) and Brendan McHale to perform services in the affairs of Verizon and who with respect to the physical conduct in the performance of the services is subject to Verizon, Defendants John Does (1-20) and Brendan McHale control or right to control.

112.    Defendant Verizon hired the Defendants John Does (1-20) and Defendant McHale and had exercised such control over the details of the work, by which the distinct business all Defendants were engaged in, holding them vicariously liable for the Defendant Employees' actions, which happened through their course of employment.

113.    Defendant Verizon did not take appropriate action to prevent harm to others, such as the plaintiff, Marisa Powell.

114.    As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in

mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

115. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining employees Defendant McHale and Defendants John Does (1-20) and is therefore vicariously liable for their actions against the plaintiff.

   **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

### COUNT FIFTEEN
### RESPONDEAT SUPERIOR

116. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

117. At all relevant times, all defendant employees of Verizon were acting for, upon, and in furtherance of the business of their employer and within the scope of their employment.

118. As a result, Verizon facilitated Defendant McHale's predatory behavior.

119. Consequently, Verizon is liable under the doctrine of respondeat superior for their tortious actions.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

### COUNT SIXTEEN
### RATIFICATION

120. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

121. Defendant McHale was an agent, director, or employee of Verizon.

122. At the time of the acts stated in the Complaint, there was an actual or assumed agency relationship between Defendants John Does (1-20), Defendant McHale and Verizon.

123. All acts or omissions alleged of were ratified by Verizon. Verizon had investigated or knew of the acts and omissions of Defendant McHale and Verizon, employees, managers, supervisors, executives, and directors were informed that Brendan McHale was harassing and stalking Plaintiff and refused to take any action to stop him.

124. Moreover, Verizon managers, supervisors, executives, and directors hid this information so that Defendant McHale continue to work for Verizon.

125. Despite knowledge of Brendan McHale's misconduct, no disciplinary action was taken and he was allowed unfettered access to Plaintiffs work space.

126. As a result, Verizon facilitated Brendan McHale's predatory behavior.

127. Verizon, is thus responsible for Brendan McHale's acts of harassment, stalking, false imprisonment, invasion of privacy, and intentional or negligent infliction of emotional distress.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT SEVENTEEN
### FAILURE TO WARN/MISREPRESENTATION

128. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

129. Defendant Brendan McHale was hired by Defendant Verizon

130. Defendant Verizon, failed to do their due diligence, which would have revealed information about a potentially violent applicant or employee, such as Defendant McHale.

40

131. Defendant Verizon, failed to warn that Defendant McHale was a threat to public safety.

132. Defendant Verizon, failed to take even minimal efforts to determine whether the employee was a threat to the public.

133. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

134. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm

to plaintiff by retaining their employee the Defendant Brendan McHale.

**WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT EIGHTTEEN
## GROSS NEGLIGENCE

135. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

136. Defendant Verizon owed a heightened duty to Marisa Powell to exercise reasonable care in the planning and providing of proper accommodations for Marisa Powell's work space.

137. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by allowing Brendan McHale unfettered access to Marisa Powell's work office.

138. Defendant Verizon breached their legal duty to Marisa Powell and failed to exercise reasonable care, and acted with reckless, willful, and wanton disregard for her safety.

139. Defendants knew or should have known that their wanton or reckless conduct would result in a foreseeable injury to Marisa Powell.

    **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

## COUNT NINETEEN
### CIVIL CONSPIRACY OF VERIZON EMPLOYEES, ITS MEMBERS AND ASSOCIATES, AND VERIZON

140. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

141. Verizon Employees and its members and associates entered into an agreement with other members for the purpose of concealing the sexual assault/harassment and race based discrimination of Marisa Powell, the Verizon Employees agreed to do so, thereby putting Plaintiff in severe physical, personal, and mental harm.

142. Defendant Verizon Employees, and John Does 1-20 took steps to further conspire to sexually assault/harass and discriminate against Plaintiff, and protect the assailants by concealing the allegations of sexual assault/harassment and discrimination undermining the reports/allegations of Plaintiff.

43

143. Defendants did in fact commit the above acts against Plaintiff.

144. In furtherance of said conspiracy with each other Defendants and John Does 1-20 committed these tortious acts.

145. Above Defendants were acting in the course of their agency relationship as Verizon employees when said tortious acts were committed.

146. In furtherance of the authority given to them by Defendant Verizon, the company employees used their position of power to suppress and under-report the sexual assault/harassment and racial discrimination of Plaintiff by assailants in direct violation of Federal statutory regulations.

147. Plaintiff suffered substantial harm because of the civil conspiracy by Defendant Verizon employees, its members, and associates.

148. Defendants are directly and collectively liable for the aforementioned actions of the members/associates of Verizon Employees and Defendants are directly and vicariously liable for the aforesaid acts of its members and associates.

149. As a direct and proximate result of the Defendants' civil conspiracy the Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life;; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body;

44

severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

**WHEREFORE,** Plaintiff respectfully requests judgment in her favor and against all defendants for compensatory damages for Plaintiff's psychological and emotional distress and damages, loss of standing in her community, damage to her reputation, and her unreimbursed out of pocket expenses incurred in response to these circumstances; Punitive damages; Injunctive relief requiring Defendant to take effective steps to prevent race-based discrimination and harassment, sex-based discrimination and harassment, including sexual assault/harassment, in its education programs; fully investigate conduct that may constitute race-based harassment and/or sexual assault/harassment; appropriately respond to all conduct that may constitute race-based harassment and/or sexual

assault/harassment; and mitigate the effects of harassment and/or assault including by eliminating any hostile environment that may arise from or contribute to it; statutory interest; costs; and reasonable attorney fees.

## COUNT TWENTY
### PUNITIVE DAMAGES

150. Plaintiff repeats and reiterates all of the allegations contained in the previous counts and/or paragraphs as if set forth at length herein.

151. Defendant Brendan McHale was hired by Defendant Verizon

152. The New Jersey Punitive Damages Act, N.J.S.A. 2A:15-5.9, punitive damages may be awarded to the plaintiff only if he or she proves, by clear and convincing evidence that the harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns Defendants, all, individually and jointly, acted with malice, fraud, wantonness, oppression, and willful misconduct, with the specific intent to cause harm.

153. The Defendants' conduct had a very serious likelihood that serious harm would arise.

154. The Defendants' had awareness, careless, negligent, or reckless disregard of the likelihood that such serious harm would arise from his conduct.

155. The harm suffered was the result of the Defendants' acts of actual malice, which involved public policy and social concerns, alleged herein exceeded all possible bounds of human decency and was outrageous and unacceptable in a civilized society.

156. The aforementioned conduct of Defendants is so outrageous in character, and so extreme in degree to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community, thereby rising to the level of willful, wanton, knowing, and intentional misconduct under the Punitive Damages Act.

157. Defendant Verizon had no proper implementation of a harassment/discrimination policy in place at the time of abuse.

158. Even if Verizon did have a token policy in place, it is clear based on the events of the case that it was not enforced or taught properly and supported with adequate training courses which is equal to not having a policy at all.

159. The lack of a policy is evident from the moment Marisa Powell told her manager about the photo of the large breasted white woman placed in her desk and the noose placed above her desk.

160. This is compounded by when Marisa told her manager and union representatives that Defendant McHale was stalking her, and her manager and union representatives too no action towards investigating Defendant McHale.

161. Additionally Defendant Verizon was reckless in allowing Defendant John Does (1-20) unfettered access to the office of Marisa Powell, where they were able to fashion a noose made of wires and hang it above Plaintiff's desk to threaten and intimidate her and place a picture of a large breasted, naked, white woman.

162. As a direct and proximate result of the intentional, extreme and outrageous conduct of Defendants, plaintiff was caused to sustain serious, life threatening, permanent injuries.

163. As a direct and proximate result of the conduct described herein above, Plaintiff has and will continue to suffer physical injury; severe emotional distress and anguish; diminished enjoyment of life; difficulty and an inability to focus; difficulty and an inability to perform work-related tasks; anxiety; depression; humiliation; pain in mind and body; severe embarrassment; is having and has had difficulty living a normal life; has not and will not engage in normal activities; will suffer from behavior patterns and will continue to do so in the future; will in the future be caused to endure severe pain in mind and body; has endured interference with and will continue to endure interference with engaging in her full normal daily activities. Plaintiff's self-esteem and ability to trust others has been substantially impaired, needing to obtain help and treatment from professionals and health care professionals in

general and may incur medical, hospital and psychiatric expenses in amounts yet to be determined.

164. Defendant Verizon acted carelessly, recklessly, negligently, and grossly negligent, and caused or allowed to be caused great harm to plaintiff by retaining their employee the Defendant Brendan McHale after learning of his dangerous propensities and failing to warn the plaintiff, and is therefore vicariously liable for his actions against the plaintiff.

     **WHEREFORE**, Plaintiff hereby demands judgment against Defendants for compensatory and punitive damages, interest, costs of suit, attorneys' fees and such other relief as the Court or Jury may deem proper.

### PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

1. For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2. For lost wages and all other compensation denied or lost to Plaintiff by reason of Defendants' unlawful actions, in an amount to be proven at trial;

3. For compensatory damages for Plaintiff's emotional pain and suffering, in an amount to be proven at trial;

4. For punitive damages in an amount to be determined at trial;

5. For liquidated damages;

6. For interest on lost wages, compensation, and damages, including

49

pre- and post-judgment interest and an upward adjustment for inflation;

7. For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

8. For reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), New Jersey Revised Statutes § 10:5-27.1, and other laws; and

9. For such other and further relief as this Court deems just and proper.

FUGGI LAW FIRM, P.C.

DATE: 3.12.2019

ROBERT R. FUGGI, JR., ESQ.

**JURY DEMAND**

Plaintiff hereby demands a trial by a jury on all of the issues contained herein.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

**DESIGNATION OF TRIAL COUNSEL**

ROBERT R. FUGGI, JR., ESQ., is hereby designated as trial counsel in this matter.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

**PLAINTIFF'S DEMAND FOR DAMAGES**

Plaintiff hereby demands damages from Defendants in an amount to be determined at the time of trial.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby certified that the matter in controversy is not the subject of any other action pending in any Court or arbitration proceeding and plaintiff does not contemplate any other action or Arbitration proceeding.

I certify that the foregoing statements made by me are true and correct to the best of my knowledge and information.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## DEMAND FOR ANSWERS TO INTERROGATORIES

Plaintiff(s) hereby make(s) demand for fully responsive answers to New Jersey Court Rules Appendix II, Form C answers within sixty (60) days of the date of service of this Complaint.

In answering, please consider the events alleged in this Complaint as the accident or occurrence and to which such questions relate.  Please give specific information in your answers and not merely references to medical, police or other records or reports.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

## NOTICE TO PRODUCE

Pursuant to the Rules of Court, the undersigned requests that you produce the following documents and other items for inspection and copying at the offices of FUGGI LAW FIRM, P.C. 47 Main Street, Toms River, New Jersey 08753, within 30 days. You may comply with this request by mailing legible copies of the documents.

1. All written statements made and/or signed by any party Defendant or their agent, servant or employee, relative to reports made to any Defendant(s) their agent(s), servant(s) or employee(s) relative to any act or behavior of Defendants involving harassment, assault and intention infliction of emotional distress.

2. All written statements made and/or signed by the party serving this request or by any agent or employee of the party serving this request.

3. All written evidence of any oral statements made by the party serving this request or by any agent or employee of the party serving this request.

4. All charts, drawings, illustrations, diagrams, and other documents that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

5. All records pertaining to any tests, inspections and examinations performed with respect to any object, thing, or substance relevant to this action. This refers to tests and examinations performed by persons other than you, your attorneys, or anyone acting on your behalf.

6. All documents that you or your attorneys supplied to any experts who will be called as witnesses on your behalf at the trial of this action.

7. All videos and films that you or your attorneys intend to exhibit to the jury or introduce into evidence at the trial of this action.

8. The written reports of all experts who you or your attorneys intend to call as witnesses on your behalf at the trial of this action.

9. Copies of any and all Complaints filed in this State or any other against any of the Defendants arising out of allegations of assault, general negligence, or intentional infliction of emotional distress.

10. All police reports relative to any action or behavior engaged in by Defendant or any Defendant, their agent servant or employee, from date of hiring to present.

11. All interrogatories, and Notices to Produce previously answered by you in this action. All depositions noticed by you or taken of you.

FUGGI LAW FIRM, P.C.

ROBERT R. FUGGI, JR., ESQ.

# EXHIBIT A

# EXHIBIT B

