**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| **MARISA POWELL,** | Civ. No. 19-8418 (KM) (MAH) |
| **Plaintiff,** | **OPINION** |
| **v.** | |
| **VERIZON, BRENDAN MCHALE, JOHN DOES 1–20 (fictitious individuals), and ABC CORPORATIONS 1–6 (fictitious names),** | |
| **Defendants.** | |

**KEVIN MCNULTY, U.S.D.J.:**

The plaintiff, Marisa Powell, has sued defendants Verizon and Brendan McHale, as well as anonymous others, under Title VII of the Civil Rights Act of 1964, the New Jersey Law Against Discrimination, and the state common law. She alleges twenty-one causes of action, including discrimination, hostile work environment, and retaliation.

Now before the Court are the motions of Verizon and McHale to dismiss the amended complaint for failure to state a claim upon which relief may be granted, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 32 & 33). The motions to dismiss are granted for the most part. The only claims remaining are (1) the hostile work environment claim under Title VII (Count 3), as against Verizon only; and (2) the claim for intentional infliction of emotional distress (Count 9).

## I. Facts[1]

Verizon has employed Marisa Powell since 1989. She currently works at Verizon's Madison office as a Network Tech. (1AC ¶ 1–2). Powell is an African-

---

[1] For purposes of this motion, the facts alleged in the Complaint, not yet tested by any fact finder, are assumed to be true. *See* Section III.A, *infra*. Docket entries will be cited as "DE __" and the First Amended Complaint will be cited as "1AC".

American woman, a fact relevant to the allegations. (1AC ¶ 1). The facts of this case begin with her time at the Morristown office and conclude at the Madison office, where she is currently assigned. (1AC ¶ 3).

In June 2015, Powell first suffered harassment at the hands of her co-worker Brendan McHale. (1AC ¶ 4). McHale began stalking Powell while she was working. (1AC ¶ 5) He would go out of his way to find her and watch her and would routinely come up behind her and yell at her. (1AC ¶ 5). He would also hide and lock her equipment without her knowledge or consent. (1AC ¶ 5). Powell immediately reported this harassment to supervisors and union representatives, but neither took any effective action against McHale. (1AC ¶ 6). Eventually, a manager and union representatives scheduled a meeting. (1AC ¶ 7). Before the meeting, the union representatives told Mrs. Powell not to say "anything that will get her in trouble or fired." (1AC ¶ 7). Powell is unclear what this meant. (1AC ¶ 7).

At the meeting Powell told her manager that she simply wanted to be able to come to work each day without feeling afraid of or threatened by coworkers. (1AC ¶ 8). Afterward, Powell overheard her union representatives tell her manager that Powell was maneuvering to be moved closer to home. This was not true. (1AC ¶ 9).

Sometime shortly after the meeting, Powell was told to report to Verizon internal security. (1AC ¶ 10). She was interrogated and falsely accused of having taken photos of her co-workers. (1AC ¶ 10). A few days later, Powell was told not to tell anyone about her interrogation at the hands of Verizon security. (1AC ¶ 11).

As a result of the constant stalking by McHale, Powell developed a medical condition and took a nine-month leave of absence pursuant to an Employee Assistance Program ("EAP").[2] (1AC ¶ 12). Upon her return, Powell

---

[2]     An employee assistance program (EAP) is a work-based intervention program designed to assist employees in resolving personal problems that may be adversely affecting the employee's performance. (1AC ¶ 12).

was refused any accommodation for her documented medical condition. (1AC ¶ 13). At this point she was reassigned to Verizon's Madison office. (1AC ¶ 13). The Madison office, however, was still within the area that McHale covered, and Powell was regularly forced to see and interact with him. (1AC ¶ 14).

In Madison, Powell was assigned to the switch room, where her laptop was secured to the desk. (1AC ¶ 15). Her supervisors told her that she was not allowed to leave the room while at work. (1AC ¶ 15). During her first week back at work, McHale's duties took him to the Madison office, but Powell received no advance notice that he would be there. (1AC ¶ 16). When she mentioned the stalking issue to her supervisors, she was told that Verizon could not protect her, and they instructed her to call 911 if she felt threatened. (1AC ¶ 16). McHale continued to cover the Madison office from time to time. (1AC ¶ 17).

In August 2017, Powell found in her desk drawer an advertisement for Playboy magazine that featured a picture of a naked woman with the message "Every Man's Christmas Wish." (1AC ¶ 18). Only Verizon employees have access to the area where Powell worked. (1AC ¶ 19).

After some time working in Madison, Powell took a second leave of absence—this one related to a back injury—but she again returned to work. (1AC ¶ 21). After this second leave of absence, she requested a transfer to an office where she would have no further contact with McHale, but this request was ignored. (1AC ¶ 21–22). Powell continued to work in Madison but was now also expected to cover Morristown when necessary. (1AC ¶ 22).

On the February 14, 2019, Powell was in the Madison office as usual. (1AC ¶ 23). McHale had worked the overnight shift in Madison from February 13 to 14. (1AC ¶ 24). That morning, Powell entered her workspace to find a noose crafted out of wires hanging above her desk. (1AC ¶ 25). The noose— which was tied around a support beam—had been fashioned from red, white, green, and blue wires that matched none of the other wires in the office. (1AC ¶ 33). Powell was humiliated, anxious, distressed, nervous, and anguished. (1AC ¶ 30). Only Verizon employees had access to Powell's workspace. (1AC ¶ 30).

Powell immediately took a picture of the noose and sent the picture to two others. (1AC ¶ 34). She also emailed her union representative, Chuck Webber; her supervisor, Bryan Curty; her manager, Karen Lamore; and Director Orlando Figueroa. (1AC ¶ 35). Eventually, John Miller, an official from her union, called and apologized for what had happened. (1AC ¶ 37). Powell then emailed Yolanda Stancil, Verizon's regional president, about the noose, attaching pictures to the message. (1AC ¶ 38). "In fear of the noose and what could have happened while she was alone," Powell then hid from her coworkers. (1AC ¶ 40).

About an hour later, Curty arrived at the Madison office and called for her. (1AC ¶¶ 39, 41). Curty asked Powell what had happened, and Powell replied "this," pointing to the noose. (1AC ¶ 42). Curty asked "what?" and "where?" as if he could not see the noose. (1AC ¶ 43). Finally, after Powell urged him on, he acknowledged the noose by saying "Oh this?" (1AC ¶ 44). When Powell told him it was a noose, he said "it could be, but then maybe not." (1AC ¶ 44). Powell—the only African American woman in the office—was in great emotional pain. (1AC ¶ 45). She began to cry and walked out of the room. (1AC ¶ 45).

Powell hid in a quiet area, crying, until Curty approached her and told her he had cut down the noose. (1AC ¶ 46). He told Powell that she looked upset and that Verizon's human resources department was aware of the situation. (1AC ¶ 47). He also told her that if he saw someone doing this, he would fire them on the spot "or give them ten days." (1AC ¶ 47).

Curty asked Powell if she wanted to leave, and she told him she did. (1AC ¶ 50). He accompanied her outside and asked her to text him when she arrived at home. (1AC ¶ 51).

Powell promptly filed a complaint with the Equal Employment Opportunity Commission on February 26, 2019 (1AC ¶ 55), but she has not had any additional contact with Verizon regarding the incident, (1AC ¶ 56). The Morris County Prosecutor's Office is currently conducting a hate crime investigation into the incident. (1AC ¶ 57).

4

## II.    Procedural History

On June 3, 2019, Powell filed her (first) amended complaint, naming as defendants Verizon and McHale, as well as John Doe defendants. (DE 21). The amended complaint asserts the following twenty-one causes of action:

1.    Race-Based Discrimination in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(A)

2.    Race-Based Discrimination in Violation of the New Jersey Law Against Discrimination, N.J. Stat. Ann. § 10:5-12

3.    Race-Based Discrimination (Hostile Work Environment) in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(A)

4.    Retaliation in Violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-3(A)

5.    Sexual Harassment/Assault

6.    Violation of the Americans with Disabilities Act

7.    False Imprisonment

8.    Invasion of Privacy

9.    Intentional Infliction of Emotional Distress

10.    Negligent Infliction of Emotional Distress

11.    Negligent Hiring

12.    Negligent Supervision

13.    Negligent Retention

14.    Vicarious Liability

15.    *Respondeat Superior*

16.    Ratification

17.    Failure to Warn/Misrepresentation

18.    Gross Negligence

19.    Civil Conspiracy

20.    *Res Ipsa Loquitur*

21.    Punitive Damages

(DE 21). On July 1, 2019, defendants Verizon and McHale moved to dismiss the amended complaint. (DE 32 & 33).

## III. Discussion

### A. Standard of Review

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Animal Sci. Prods., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 469 n.9 (3d Cir. 2011). For the purposes of a motion to dismiss, the facts alleged in the complaint are accepted as true and all reasonable inferences are drawn in favor of the plaintiff. *N.J. Carpenters & the Trs. Thereof v. Tishman Const. Corp. of N.J.*, 760 F.3d 297, 302 (3d Cir. 2014).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also W. Run Student Hous. Assocs., LLC v. Huntington Nat. Bank*, 712 F.3d 165, 169 (3d Cir. 2013). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 556 U.S. at 678.

The Court in considering a Rule 12(b)(6) motion is confined to the allegations of the complaint, with narrow exceptions:

> Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] integral to or explicitly relied upon in the complaint," or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document.

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 134 n.7 (3d Cir. 2016) (quoting *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original); *Pension Ben. Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993)); *see also Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) ("However, an exception to the general rule is that a 'document integral to or explicitly relied upon in the complaint' may be considered 'without converting the motion to dismiss into one for summary judgment.' ") (quoting *Burlington Coat Factory*, 114 F.3d at 1426); *Pension Ben. Guar. Corp.*, 998 F.2d at 1196.

The amended complaint alleges, in connection with the issues of exhaustion of administrative remedies and timeliness, that Powell "promptly filed an EEOC complaint on February 26, 2019." (1AC ¶ 55). Because it is explicitly cited in and integral to the complaint, I have considered the EEOC complaint (DE 32-3), not for its truth, but for its procedural and legal effect on the current proceeding.

## B. Legal Analysis

### 1. Title VII and NJLAD

The amended complaint alleges three violations of Title VII of the Civil Rights Act of 1964 (Counts 1, 3, and 4) and one violation of the New Jersey Law Against Discrimination ("NJLAD") (Count 2).

"Title VII prohibits discriminatory employment practices based upon an individual's race, color, religion, sex, or national origin." *Shahin v. Delaware*, 424 F. App'x 90, 92–93 (3d Cir. 2011) (citations omitted). In NJLAD actions for employment discrimination, courts generally follow Title VII precedent. *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) ("This Court's discrimination inquiry is the same for claims filed under Title VII and the NJLAD . . . .") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)).

### (a) Liability of coworker under Title VII and NJLAD

As a threshold matter, the Title VII and NJLAD claims will be dismissed as against McHale only.

The courts of this Circuit have routinely found that coworkers cannot be held liable under Title VII. *Canete v. Barnabas Health Sys.*, No. 12-cv-7222, 2013 WL 5305236, at *3 (D.N.J. Sept. 18, 2013) (citing *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1077–78 (3d Cir. 1996)); *Clements v. Hous. Auth.*, 532 F. Supp. 2d 700, 705 n.1 (D.N.J. 2007) ("It is well settled that individuals may not be held liable under Title VII").

Direct liability under NJLAD is likewise generally limited to employers. *See Herman v. Coastal Corp.*, 348 N.J. Super. 1, 28 (App. Div. 2002), *cert. denied*, 174 N.J. 363 (2002); *see also Cicchetti v. Morris Cty. Sheriff's Office*, 194 N.J. 563, 594 (2008) (citing *Herman*, 348 N.J. Super at 28); *Tyson v. CIGNA Corp.*, 918 F. Supp. 836, 840 (D.N.J. 1996), *aff'd*, 149 F.3d 1165 (3d Cir. 1998) (holding that NJLAD "imposes liability only on 'employers' and not individual employees").[3]

At the outset, then, the Title VII and NJLAD claims (Counts 1, 2, 3, and 4) are dismissed as against McHale. They may be maintained, however, against the employer, Verizon.

---

[3]     While NJLAD does not provide for individual liability, it is unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden [under NJLAD]." N.J. Stat. Ann. § 10:5-12e. Such conduct may result in personal liability. *Id.* To hold an employee liable as an aider or abettor under NJLAD, a plaintiff must show that "(1) the party whom the defendant aids must perform a wrongful act that causes an injury; (2) the defendant must be generally aware of his role as part of an overall illegal or tortious activity at the time that he provides the assistance; [and] (3) the defendant must knowingly and substantially assist the principal violation." *Tarr v. Ciasulli*, 181 N.J. 70, 84 (2004); see also *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 127 (3d Cir. 1999).

Powell has not alleged or argued for an aiding and abetting theory. This dismissal, however, is without prejudice to amendment.

### (b) Title VII and NJLAD racial discrimination claims (Counts 1 & 2): adverse employment action

The Title VII and NJLAD claims of racially based employment discrimination (Counts 1 and 2)[4] require a plaintiff to allege as a prima facie case that "1) she belongs to a protected class; 2) she was qualified for the position; 3) she was subject to an adverse employment action; and 4) the adverse action [occurred] under circumstances giving rise to an inference of discrimination." *Shahin*, 424 F. App'x at 92–93; *see also Tourtellotte*, 636 F. App'x at 842 (citing *Jones v. Sch. Dist. of Phila.*, 198 F.3d 403, 410–11 (3d Cir. 1999); *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 n. 6, 101 S. Ct. 1089 (1981)). If the plaintiff establishes a prima facie case, the defendant must provide a legitimate, non-discriminatory reason for the adverse employment action. If the defendant can proffer such a reason, the plaintiff must show that it is a pretext for discrimination. *Shanin,* 424 F. App'x at 93 (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)).

The amended complaint, to be sure, alleges the first two elements of an employment-discrimination claim: that Powell is a member of a protected class and that she is qualified for the position she holds. It fails to allege, however, that her employer took an "adverse employment action" under circumstances suggesting discrimination.

For purposes of Title VII, an adverse employment action is one that is "serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment, deprive her future employment opportunities, or otherwise have a 'materially adverse' effect on her status as an employee." *Hargrave v. Cnty. of Atl.*, 262 F. Supp. 2d 393, 427 (D.N.J. 2003) (quoting *Robinson v. City of Pittsburgh*, 120 F.3d 1286, 1300–01 (3d Cir. 1997) (citing *Burlington Indus. Inc. v. Ellerth*, 524 U.S. 742, 749 (1998) (defining

---

[4]    The adverse employment action requirement as to the Title VII retaliation claim alleged in Count 4 is discussed separately in the following subsection (c). The hostile work environment claim alleged in Count 3 does not have an adverse employment action requirement.

adverse employment action as "significant change in employment status, such as hiring, firing, failing to promote, reassignment, a decision causing a significant change in benefits"). An adverse employment action is defined similarly for purposes of the NJLAD. *Marrero v. Camden Cnty. Bd. of Soc. Servs.*, 164 F. Supp.2d 455, 473 (D.N.J. 2001) ("In order to constitute adverse employment action for purposes of the LAD, retaliatory conduct must affect adversely the terms, conditions, or privileges of the plaintiff's employment or limit, segregate, or classify the plaintiff in a way which would tend to deprive her of employment opportunities or otherwise affect her status as an employee.") (quoting *Hurley*, 1998 U.S. Dist. LEXIS 12742, at *12); *see also Tourtellotte*, 636 F. App'x 842 (The "discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard . . . .").

An adverse employment action thus may fall well short of dismissal, but it must affect employment status. Some representative examples of an adverse employment action follow. *See Nichols v. Caroline Cnty. Bd. of Educ.*, No. 02-3523, 2004 U.S. Dist. LEXIS 2851 (D. Md. Feb. 23, 2004), *aff'd*, 114 Fed. App'x 576 (4th Cir. 2004) (downgrade of teacher's certificate, which resulted in salary decrease and ultimate termination, was adverse employment action); *Coles v. Perry*, 271 F. Supp. 2d 157 (D.D.C. 2003) (decision to remove employee from best qualified list for vacant promotional position, thus destroying employee's ability to advance from lower position, was adverse employment action); *Webb v. Secretary*, No. 85-6833, 1986 U.S. Dist. LEXIS 23229 (E.D. Pa. July 3, 1986) (lateral transfer and lower than expected performance evaluation was adverse employment action).

From the face of the complaint, it does not appear that Verizon ever reduced Powell's compensation or benefits. Powell has never been demoted. She was never denied promotional opportunities. Indeed, her complaint and motion papers allege no bad acts by her employer, Verizon, that impacted her job duties or employment status.

The amended complaint merely makes a prediction, in conclusory terms, that such an adverse action *will* occur: "[U]pon Plaintiff Powell's return to work, she will, per Verizon practices and procedures, be placed on an expedited track to termination of employment." (1AC ¶ 13). The complaint provides no factual support for these statements and makes no further relevant allegations.

That speculative allegation does not suffice to set forth the essential element of an adverse employment action. Counts 1 and 2, alleging Title VII employment discrimination, are therefore dismissed.

### (c) Title VII retaliation claim (Count 4): adverse employment action

Count 4 asserts a claim of employer retaliation for activity protected under Title VII. It, too, requires an adverse employment action, which is not adequately alleged here.

A prima facie case of retaliation requires a plaintiff to allege that (1) she engaged in protected activity, (2) she suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse employment action. *Carvalho-Grevious v. Del. State Univ.*, 851 F. 3d 249, 257 (3d Cir. 2017) (citations omitted). A plaintiff asserting a claim of retaliation has a higher causal burden than a plaintiff asserting a claim of direct status-based discrimination under Title VII. *Id.* at 257–58. That is, a plaintiff asserting a discrimination claim need only show a protected status was a "motivating factor"; by contrast, a plaintiff asserting a retaliation claim must show that the retaliatory animus was the "but-for" cause of the adverse employment action. *see also Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 354 (2013).

For the reasons stated in subsection (b), immediately preceding, Powell has not alleged an adverse employment action by Verizon, or, *a fortiori,* that such an action was taken in retaliation for her having exercised her rights under Title VII. Count 4 of the amended complaint is therefore dismissed.

### (d) Hostile Work Environment (Count 3)

Count 3 of the amended complaint asserts a hostile work environment claim under Title VII. To establish such a claim, the plaintiff must allege that (1) she suffered intentional discrimination because of her membership in a protected class; (2) the discrimination was severe or pervasive; (3) it detrimentally affected her; (4) it would have detrimentally affected a reasonable person of the same protected class in her position; and (5) there is a basis for employer liability. *See Edmond v. Plainfield Bd. of Educ.*, 171 F. Supp. 3d 293, 309 (D.N.J. 2016) (citing *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)); *Caver v. City of Trenton*, 420 F.3d 243, 262 (3d Cir. 2005)).

The allegations of the complaint clearly set forth those five essential elements of a hostile work environment claim. Powell alleges that she was discriminated against because of her race by McHale (and the anonymous John Doe(s)). Stalking, yelling, locking equipment, and planting offensive content could be found to be severe or pervasive forms of harassment. It cannot be disputed that McHale's conduct and the anonymously planted noose, if they occurred as alleged, would detrimentally affect a reasonable person of the plaintiff's race. Because Powell alleges that she informed Verizon of these events but Verizon took no action, there is a basis for employer liability. These allegations therefore state a claim for a hostile work environment.

Verizon does not effectively argue otherwise. Rather, it focuses on the argument that the hostile work environment claim, or most of it, was not asserted timely. Verizon summarizes Powell's allegations, grouping them into four timeframes, thus:

12

| Timeframe | Period | Alleged Harassment | Alleged Actors |
|---|---|---|---|
| 1 | June 2015 | McHale stalked Powell, yelled at her, and locked her equipment. | McHale |
| 2 | Early 2016 | Powell's supervisors told her that she was not permitted to leave her desk. | John Does |
| 3 | August 2017 | Plaintiff found a photograph of a naked woman in her desk. | John Does |
| 4 | February 2019 | Plaintiff found a noose fashioned from wires next to her desk. | McHale and/or John Does |

Title VII requires an aggrieved party to file a complaint with the EEOC within 300 days after an actionable employment-related violation. 42 U.S.C. § 2000e-5(e)(1).[5] For a hostile work environment claims, however, the "continuing violation" doctrine may apply. In such a case, a plaintiff may assert a hostile work environment claim based on events that occurred outside of the 300-day limitation period, provided that at least one act occurred within the 300-day period. *See Tearpock-Martini v. Borough of Shickshinny*, 756 F.3d 232, 236 (3d Cir. 2014). To invoke the continuing-violation doctrine, a plaintiff must show that the discriminatory acts "are linked in a pattern of actions which continues into the limitations period." *O'Connor v. City of Newark*, 440 F.3d 125, 127 (3d Cir. 2006). The conduct that occurred prior to the limitations period must have involved similar conduct by the same individuals, suggesting

---

[5]    Ordinarily, a Title VII plaintiff must file an administrative charge with the EEOC within 180 days of the last discriminatory act. 42 U.S.C. § 2000e-5(e)(1). However, the limitations period is extended to 300 days if a plaintiff "has initially instituted proceedings with a State or local agency." *Id.* Thus, if the plaintiff first institutes proceedings with a "State or local agency with authority to grant or seek relief from such practice," the limitations period is extended to 300 days. *Id.*

a consistent ongoing pattern. *Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013). Where a plaintiff is unable to demonstrate such a "continual, cumulative pattern of tortious conduct" by the same persons, she cannot rely on comments and conduct otherwise barred by the statute of limitations." *Speth v. Goode*, No. 95-0264, 2011 U.S. Dist. LEXIS 5792, at *25 (D.N.J. Jan. 20, 2011) (continuing-violation doctrine does not allow employees to aggregate "sporadic" acts committed by different actors "who are only grouped together by Plaintiff's allegation of an 'official vendetta'").

Verizon concedes that the events in Timeframe 4 were the subject of an EEOC complaint that was timely, but says the rest were not. Verizon further argues that the complaint fails to adequately allege a "continuing violation" theory that might have swept in the untimely allegations in Timeframes 1, 2, and 3.

I first consider Powell's EEOC complaint. It was filed on February 26, 2019. (1AC ¶ 55)[6] The EEOC complaint (like the amended complaint here) alleged an ongoing hostile work environment claim.[7] Earlier events (which are

---

[6]     Plaintiff's original complaint (DE 1) did not state that she had filed a grievance with the EEOC. The motions to dismiss the original complaint (DE 12 & 18) centered on failure to exhaust administrative remedies. The amended complaint (DE 21) added allegations that Powell had filed an EEOC complaint on February 26, 2019. The timeliness issue is allied with the issue of exhaustion of administrative remedies; if an EEOC claim was not filed at all, then it was not filed timely, and it may now be too late to do so.

[7]     To be sure, the "pattern" allegations of the EEOC complaint could have been more specific:

> I began working for the above employer in February 1989 in the position of Telephone Operator, my current position is Network Technician. Throughout my employment, I have experienced varying forms of harassment. Most recently, on February 14, 2019 a noose was placed in my work station. I immediately emailed my Supervisor Brian Curtty, Manager Karen Lamore, and Director Orlando Figueroa. Shortly after, Brian arrived and cut down the noose. However, they have not taken measures to investigate this matter and have failed to take appropriate action. Given the above, I believe I have been discriminated due to my

alleged only generally) are not specified by date; at any rate, they are not alleged to have occurred within the 300-day period preceding the filing of the EEOC charge. However, the noose incident is alleged to have occurred on February 14, 2019, well within the 300-day window.

I turn to the amended complaint in this action. The amended complaint describes the earlier events (the stalking, the photograph) more specifically. Those events are alleged to have occurred in Timeframes 1, 2, and 3 (2015–17), outside the 300-day window. The noose incident, again, is alleged to have occurred in Timeframe 4, on February 13–14, 2019, within the 300-day window. The events of Timeframes 1–4 are alleged, however, not as discrete violations, but as an ongoing pattern of harassment that began in June 2015 and continued through February 2019, creating an ongoing hostile work environment.[8] *See Tearpock-Martini*, 756 F.3d at 236; *Mandel*, 706 F.3d at 167; *O'Connor*, 440 F.3d at 127. The final act in the series allegedly occurred within the limitation period. The amended complaint therefore adequately alleges that the hostile work environment allegations were asserted timely. *See Tearpock-*

---

race (black) in violation of Title VII of the Civil Rights Act of 1964 as amended. (emphasis added).

(DE 32-3) Nevertheless, such allegations of past "varying forms of harassment," culminating in the noose incident, amounting to a hostile work environment, would be sufficient to bring the alleged pattern within the scope of the EEOC's investigation. *Cf. Anjelino v. N.Y. Times Co.*, 200 F.3d 73, 93–95 (3d Cir. 1999) (in closely related context of exhaustion of administrative remedies, hostile work environment found reasonably within scope of what the EEOC did investigate or should have investigated) (citing *Ostapowicz v. Johnson Bronze Co.*, 541 F.2d 394 (3d Cir. 1976) (The "parameters of a civil action in the District Court are defined by the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of discrimination . . . .")).

8      The stalking, the photograph, etc., in Timeframes 1–3 would not qualify as independently actionable "adverse employment actions" that would individually set the 300-day clock ticking. *See O'Connor*, 440 F.3d at 127 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002)). If actionable at all, it must be as part of a hostile work environment claim—bad news for plaintiff substantively, but good news in terms of timeliness.

*Martini*, 756 F.3d at 236; *Mandel*, 706 F.3d at 167; *O'Connor*, 440 F.3d at 127 (citing *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101).

Assessment of the strength of such a Title VII hostile work environment claim, and the strength of the allegation that these events fall into a discriminatory pattern, is for a later day. For now, I find that the hostile environment claim has been alleged timely as against Verizon. Verizon's motion to dismiss Count 3 is therefore denied.

### 2. ADA (Count 6)

The amended complaint alleges one violation of the Americans with Disabilities Act ("ADA") (Count 6). The limitations scheme under ADA is similar to that under Title VII. Under the ADA, a plaintiff must file a claim with the EEOC within 300 days of the complained-of conduct. *Mercer v. SEPTA*, 608 F. App'x 60, 63 (3d Cir. 2015) (citing 42 U.S.C. § 2000e-5(e)(1)). Otherwise, the claim is time-barred. *Id.* Although a plaintiff must normally bring suit within 180 days of an alleged discriminatory act, where the plaintiff files a claim with a state or local agency authorized to adjudicate the claim, the plaintiff is granted an extension of 300 days from the original discriminatory act. *Id.* at 63 n.2. Because New Jersey is a deferral state with an agency that has the authority to investigate employment discrimination charges, Powell would have been permitted to file a charge with the EEOC within 300 days after the alleged discriminatory act. *Id.*

Powell alleges that in early 2016, Verizon failed to accommodate her medical condition. She further alleges that she filed an EEOC charge on February 26, 2019. That EEOC charge, however, alleged only hostile environment race discrimination. The EEOC complaint did not allege, whether specifically, vaguely, or generally, any ADA claim concerning Verizon's refusal to accommodate Powell's medical condition. Such a claim would not have

reasonably fallen within the scope of any EEOC's investigation prompted by this complaint. *See* note 7, *supra*.[9]

As to the ADA claim, Powell failed to file any claim, timely or not, with the EEOC. Count 6 is therefore dismissed as to Verizon. Powell has made no ADA-related factual allegations against McHale. Count is 6 is therefore dismissed as to McHale as well.

### 3. Common-Law Claims

Powell's amended complaint, in scattershot fashion, alleges some sixteen claims under state common law. Many are not causes of action at all, but rather unattached contentions or theories of liability. Verizon and McHale have moved to dismiss each one, providing legal support for each of their arguments. (DE 32-1 & 33-1).

The following discussion focuses on Count 8 (invasion of privacy), Count 9 (intentional infliction of emotional distress), Count 15 (*respondeat superior*), and Count 19 (civil conspiracy). As to these counts, Powell's responding brief has proffered substantive arguments against dismissal, which I discuss. *See* subsections 3(a), (b), (c), and (d).

As to Counts 5, 7, 10, 11, 12, 13, 14, 16, 18, 20, and 21, however, Powell's responding papers make scarcely any argument, or no argument at all. (*See* DE 35, at 20; DE 36, at 13–14). A plaintiff concedes a claim when she fails to oppose arguments in support of a motion to dismiss it under Fed. R. Civ. P. 12(b)(6). *O'Neal v. Middletown Twp.*, No. 18-5269, 2019 U.S. Dist. LEXIS 59, at *9 (D.N.J. Jan. 2, 2019); *see also Hollister v. U.S. Postal Serv.*, 142 F. App'x 576, 577 (3d Cir. 2005); *Person v. Teamsters Local Union 863*, No. 12-2293, 2013 U.S. Dist. LEXIS 149252, at *2 (D.N.J. Oct. 17, 2013); *Ankele v. Hambrick*, 286 F. Supp. 2d 485, 496 (E.D. Pa. 2003), *aff'd*, 136 F. App'x 551 (3d Cir. 2005). For that reason alone, those enumerated counts might be

---

9    In addition, if an EEOC charge had been filed in February 2019 regarding the 2016 failure to accommodate, it likely would have been some two years too late.

dismissed. I nevertheless discuss them briefly and confirm that they should be dismissed. *See* subsections 3(e), (f), (g), and (h).

### (a) Invasion of privacy (Count 8)

In Count 8, Powell alleges an invasion of privacy, in the sense of an intrusion "upon the solitude or seclusion of her private affairs." (1AC ¶ 60) She alleges that defendants violated her privacy "by entering into the Plaintiff's office while she was not there and constructing a noose to hang above her desk." (1AC ¶ 62)

The common-law right to privacy encompasses the tort of intrusion upon seclusion. *See Hennessey v. Coastal Eagle Point Oil Co.*, 129 N.J. 81, 94 (1992). That tort imposes liability on "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns . . . if the intrusion would be highly offensive to a reasonable person." *Id.* at 94–95 (quoting Restatement (Second) of Torts § 652B (1977)).

Under New Jersey law, an essential element of the intrusion tort is that the plaintiff possesses a reasonable expectation of privacy:

> [T]he intrusion must be "highly offensive to a reasonable person," a determination that turns on what a person's reasonable expectation of privacy is with respect to the item or area searched or intruded upon. Thus, an intrusion is not highly offensive "when the [defendant] intrudes into an area in which the victim has either a limited or no expectation of privacy." Notwithstanding a plaintiff's subjective expectations of privacy, a court must determine whether objectively, given the facts and circumstances of the particular case, a person would reasonably believe he has an expectation of privacy.

*Poltrock v. N.J. Auto. Accounts Mgmt. Co.*, No. 08-1999, 2008 WL 5416396 (D.N.J. Dec. 22, 2008) (Wolfson, J.) (quoting *White v. White*, 344 N.J. Super. 211, 222 (2001)) (citing *State v. Hempele*, 120 N.J. 182, 200 (1990) (holding that "expectations of privacy are established by general social norms")), *quoted in Torsiello v. Strobeck*, 955 F. Supp. 2d 300, 315 (D.N.J. 2013) (dismissing privacy claim based on an intrusion into employee's locker).

Powell has not alleged facts to establish that she had a reasonable expectation of privacy in the area where her desk was located. In a prior case, I reviewed the law thus:

> [W]hether an employee has a reasonable expectation of privacy in her particular work setting "must be addressed on a case-by-case basis."

> In *Ratti v. Serv. Mgmt. Sys., Inc.*, the plaintiff-employee claimed intrusion after his employer opened his locked desk drawer and discovered a pellet gun inside. In granting summary judgment in favor of the employer, the court found that the employee had no objectively reasonable privacy right because "[t]he desk was located at his place of employment in an unlocked office, used by other employees, and contained his employer's documents."

*Torsiello*, 955 F. Supp. 2d at 315 (quoting *Stengart v. Loving Care Agency, Inc.*, 201 N.J. 300, 317 (2010)) (citing *Ratti v. Serv. Mgmt. Sys., Inc.*, No. 06–6034, 2008 WL 4004256, at \*3 (D.N.J. Aug. 25, 2008)). I held that the locker in the *Torsiello* case, like the desk drawer in *Ratti,* was at a place of employment and apparently contained files relevant to the medical business. I therefore dismissed the claim without prejudice for failure to adequately allege an expectation of privacy.

An expectation of privacy, if properly alleged, may indeed pose an issue requiring further factual development. As noted above, however, an intrusion is not actionable when it involves an area "in which the victim has either a limited or no expectation of privacy." *White,* 344 N.J. Super. at 222. Here, the complaint merely alleges in conclusory fashion that the plaintiff had "a reasonable expectation of privacy inside of her office at Verizon." (1AC ¶ 61). A person is not presumed to have a privacy interest in the employment environment, however, and the complaint fails to allege any *facts* suggesting an expectation of privacy. Powell alleges that she worked in a "switch room." She does not allege that this was a personal office, or that access to this area was restricted; indeed she affirmatively alleges that other Verizon employees had access to her workspace. (1AC ¶ 52).

The photograph of the noose attached as Exhibit A to the original complaint[10] further undermines Powell's allegation of an unauthorized entry to her personal "office." This was a large factory-like room full of telephone switching equipment. (DE 1, Ex. A). The noose was hung from a structural element of the building, a support beam (1AC ¶ 33), which does not suggest it was placed there by means of an invasion of Powell's personal space. For these purposes, the blatant offensiveness of the noose allegation must be separated from the allegation that the person, in planting the noose, invaded Powell's seclusion by "entering into" her office when she was not there.

Because it fails to allege facts suggesting a reasonable expectation of privacy that could give rise to an "intrusion upon seclusion," Count 8 is dismissed.

### (b) Intentional infliction of emotional distress (Count 9)

A claim of intentional infliction of emotional distress requires the plaintiff to allege four factors:

1. that defendant acted intentionally or recklessly, both in committing the alleged tortious acts and in producing emotional distress;

2. that defendant's conduct was so outrageous in character and extreme in degree as to go beyond all bounds of decency;

3. that defendant's actions were the proximate cause of the emotional distress; and

4. that the emotional distress suffered was so severe that no reasonable person could be expected to endure it.

*Mardini v. Viking Freight, Inc.*, 92 F. Supp. 2d 378,384 (D.N.J. 1999) (citing *Buckley v. Trenton Sav. Fund Soc'y,* 111 N.J. 355, 366 (1988)); *see also Horvath v. Rimtec Corp.,*102 F. Supp. 2d 219, 235 (D.N.J. 2000).

---

10    The amended complaint continues to cite to Exhibits A and B, but they are no longer attached. I assume this was merely an oversight.

Powell has sufficiently alleged those four elements, and has therefore set forth a claim that McHale and/or John Doe(s) committed the intentional tort of infliction of emotional distress. First, the nature of the noose allegations is sufficient to suggest intent. Moreover, Powell alleges that the Morris County Prosecutor's Office has opened a hate-crime investigation into the incident. Second, hanging a noose above the desk of the only African American employee in a workplace may be found outrageous and extreme—beyond all bounds of decency. Third, Powell plausibly alleges that the noose incident caused her distress. Fourth, the distress she suffered is plausibly alleged to be severe enough that it should not be endured by any reasonable person.

It is true, of course, that the plaintiff cannot say for certain who planted the noose. She alleges, however, that McHale was present in the Madison office overnight, and places her allegations in the context of McHale's alleged history of stalking, yelling, and otherwise harassing her. That is sufficient to permit the allegations to go forward to discovery.

Accordingly, McHale's motion to dismiss Count 9 is denied.

### (c) Sexual harassment/assault (Count 5)

Sexual harassment may furnish the basis for a Title VII or NJLAD claim (not alleged here), but it is not in itself a common-law tort. *See Calkins v. Dollarland,* 117 F. Supp. 2d 421 (D.N.J. 2000) (tort action not authorized based on interests already protected by NJLAD, such as harassment, sexual harassment, and retaliation); *see also Lehmann v. Toys 'R' Us,* 132 N.J. 587, 601–02 (1993).

Nor does the common law recognize a separate cause of action for "sexual harassment/assault" as such. However, it does recognize what amounts to the same thing: the tort of assault, which may be committed in a sexual manner. Count 5 alleges that, by placing the nude photograph in her desk, McHale (or some John Doe) placed Powell in "imminent apprehension and fear for her well-being." (1AC ¶¶ 38–39)

No physical contact is alleged here, but it is not strictly required. "Common law assault occurs when a defendant, 'intends to only cause apprehension' that battery is imminent." *Corradetti v. Sanitary Landfill, Inc.*, 912 F. Supp. 2d 156, 161 (D.N.J. 2012) (quoting *Kelly v. Cnty. of Monmouth*, 380 N.J. Super. 552, 559 (App. Div. 2005)). "Courts have been reluctant to protect extremely timid individuals from exaggerated fears of contact and have often stated that the apprehension must be one which would normally be aroused in the mind of a reasonable person." *Wigginton v. Servidio*, 324 N.J. Super. 114, 129 (App. Div. 1999) (affirming dismissal of assault claim where defendants made no effort to show force and words "were not spoken in a forceful, angry, offending, rude or insolent manner such that it was obvious that defendants were about to physically attack plaintiff"); *see also Hall v. Heavey*, 195 N.J. Super. 590, 593 (App. Div. 1984) (affirming dismissal because facts did not suggest battery was imminent).

Here, Powell does not allege facts tending to suggest that the photograph placed her in reasonable fear of imminent, harmful bodily contact. No person, for example, is alleged to have even been in the area when Powell discovered the photograph. Because her allegations do not set forth an apprehension of imminent harm, whether sexual or not, Powell has not pled the elements of an assault claim.

Because the plaintiff has offered no substantive argument in response to the motion to dismiss Count 5, and because it in any event fails to state a claim, Count 5 is dismissed.

### (d) False imprisonment (Count 7)

"A person is falsely imprisoned when that person's freedom of movement is constrained." *Maietta v. United Parcel Serv., Inc.*, 749 F. Supp. 1344, 1367 (D.N.J. 1990). The tort of false imprisonment has two elements: (1) detention of the person against her will; and (2) lack of proper legal authority or legal justification. *Leang v. Jersey City Bd. of Educ.*, 198 N.J. 557, 591 (2009). Detention "may be effectuated by force or by threats of force communicated

through conduct or words." *Maietta*, 749 F. Supp. at 1367. Threats of force "must be such as would 'induce a reasonable apprehension of force, and the means of coercion must be at hand.'" *Id.*

Powell's sole factual allegations in support are these:

> 15. Plaintiff was assigned in Madison to the switch room, where her laptop was secured to the desk. She was told by her supervisors that she was not permitted to leave the room while at work. This created a false imprisonment setting.

> 54. After receiving notice of Plaintiffs harassment and abuse at the hands of the Defendants John Does (1–20) and Brendan McHale, Defendant Verizon put Plaintiff in a room all by herself with explicit orders not to leave and if she felt threatened to "call the police".

(1AC ¶¶ 15 &54).

Powell does not allege force or a threat of force, but only an "assignment" to a workspace and a direction from her supervisors. The only sanction backing the assignment was perhaps punishment for insubordination or going AWOL from work, not the application or threat of force. She does not allege lack of justification; surely an employer may assign a worker to a particular area. She presumably was not held prisoner but went home from work each afternoon.

Because the plaintiff has offered no substantive argument in response to the motion to dismiss Count 7, and because in any event it fails to state a claim, Count 7 is dismissed.[11]

### (e) Negligence claims (Counts 10, 11, 12, 13, 17 & 18)

The amended complaint asserts six claims sounding in negligence: Negligent Infliction of Emotional Distress (Count 10); Negligent Hiring (Count 11); Negligent Supervision (Count 12); Negligent Retention (Count 13); Failure to Warn/Misrepresentation (Count 17); and Gross Negligence (Count 18).

---

[11] The timing is not clear from the complaint, but the chronological sequence also suggests that the false imprisonment claim may be barred by the two-year statute of limitations. *See* N.J. Stat. Ann. § 2A:14-2.

An employee may not "sue his [or her] employer in negligence nor can the employee sue a co-employee." All such negligence claims are subsumed by the scheme set up by the Workers Compensation Act, N.J. Stat. Ann. § 34:15-8; *see also Wellenheider v. Rader*, 49 N.J. 1, 9 (1967); *Millison v. E.I. du Pont de Nemours & Co.*, 101 N.J. 161, 165 (1985). That is so regardless of the kind of injury alleged. *See Rodriguez v. Ready Pac Produce*, No. 13-4634, 2014 U.S. Dist. LEXIS 64139, at *17 (D.N.J. 2014). The proper forums for such grievances are the administrative bodies designed by the New Jersey Legislature for the purpose.

Because the plaintiff has offered no substantive arguments in response to the motion to dismiss the negligence counts, and because in any event they fail to state a claim, Counts 10, 11, 12, 13, 17, and 18 are dismissed.

### (f) Civil conspiracy (Count 19)

A cause of action for civil conspiracy requires a plaintiff to allege "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damage." *Banco Popular N. Am. v. Gandi*, 184 N.J. 161 (2005). "A corporation and its employees are not separate persons for the purpose of civil conspiracy, and a conspiracy cannot exist in the absence of two or more persons acting in concert." *Marjac, LLC v. Trenk*, 2006 U.S. Dist. LEXIS 91574, at *51 (D.N.J. Dec. 19, 2006); *Nat'l Auto Div., LLC v. Collector's All., Inc.*, No. A-3178, 2017 N.J. Super. Unpub. LEXIS 234, at *13 (App. Div. Jan. 31, 2017). "The gravamen of a conspiracy action is not the conspiracy itself but the underlying wrong which, absent the conspiracy, would give a right of action." *Ewing v. Cumberland Cnty.*, 152 F. Supp. 3d 269, 301 (D.N.J. 2015).

Here, the agreement to commit some underlying tort is not alleged with any specificity. Moreover, the only named defendants are the corporate entity

and its employees, and a corporation cannot as a matter of law conspire civilly with its employees. Count 19 is therefore dismissed.

### (g) *Respondeat superior* (Count 15) (not a cause of action)

Count 15 of Powell's amended complaint purports to state a cause of action for *respondeat superior*. *Respondeat superior* is not properly understood as a cause of action. *See Rowan v. City of Bayonne*, 474 Fed. App'x 875, 878 n.3 (3d Cir. 2012) (citing *Carter v. Reynolds*, 175 N.J. 402 (2003)). Rather it is a legal doctrine under which a court may impose vicarious liability on the employer of a person who has committed some independent tort. *Carter*, 175 N.J. at 408 (citing W. Page Keeton, *Prosser and Keeton on the Law of Torts* §§ 4, 69 at 21–23, 449–501 (5th ed. 1984)). *Respondeat superior* is not in itself, then, a "claim upon which relief may be granted." Fed. R. Civ. P. 12(b)(6). Count 15 is therefore dismissed.

That is not to say, however, that the doctrine of *respondeat superior* may not apply in the context of the plaintiff's tort claims, so I discuss it briefly. An employer may be liable for an employee's tortious acts when such acts are committed within the scope of employment. *Carter*, 175 N.J. at 408–09. In order to establish liability under the doctrine of *respondeat superior*, a plaintiff must establish: (1) that the wrongdoer is employed by the defendant; (2) acts or omissions causing injuries or damages to others; and (3) that the employee committed the acts or omissions within the scope of his employment, *i.e.*, when the employee was performing the services for which he or she had been engaged. *Davis v. Devereux Found.*, 209 N.J. 269, 287 (2012); *see also* 23 Restatement (Second) of Agency § 219 (1958). The term "scope of employment" refers to those acts which are so closely connected with what the servant is employed to do, and so fairly and reasonably incidental to it, that they may be regarded as methods, even though improper ones, of carrying out the objectives of employment. *Carter*, 175 N.J at 411 (quotations omitted).

The scope-of-employment issue comprises a two-part inquiry. *Stroka v. United Airlines*, 364 N.J. Super. 333, 339 (App. Div. 2003). First, there must be

a time-and-place nexus between the employment and the incident. *See Coleman v. Cycle Transformer Corp.*, 105 N.J. 285, 288–89, (1986). Second, there must be a causal connection between the employment and the incident itself. *Id.* To demonstrate the causal connection between the employment and the incident, "[i]t must be established that the work was at least a contributing cause of the injury and that the risk of the occurrence was reasonably incident to the employment." *Id.* at 290. "[T]he 'but for' or positional-risk test" used for this analysis in New Jersey asks "whether it is more probably true than not that the injury would have occurred during the time and place of employment rather than elsewhere." *Id.* at 290–91 (quoting *Howard v. Harwood's Rest. Co.*, 25 N.J. 72, 83 (1957)). "[R]isks that result from a purely personal activity" are deemed to fall outside of the course of employment. *Id.*

Here, Powell alleges and Verizon concedes (or at least does not contest) that it employed McHale (and likely employed any anonymous John Doe whose conduct allegedly injured Powell). The *respondeat superior* inquiry will thus probably depend on whether the allegedly tortious conduct occurred within the scope of any such individual's employment. Should the liability of any employee for any of the tort claims eventually be established, then Verizon's liability via *respondeat superior* may become an issue.

### (h) Other theories of liability not amounting to causes of action (Counts 14, 16, 20 & 21)

Vicarious liability (Count 14) is a legal theory by which a third-party can be held liable for a tortfeasor's conduct. It is not an independent cause of action. *Galicki v. New Jersey*, No. 14-169, 2016 U.S. Dist. LEXIS 126076, at *108–09 (D.N.J. Sep. 15, 2016).

Ratification (Count 16) is "the affirmance by a person of a prior act which did not bind him but which was done, or professedly done on his account, whereby the act, as to some or all persons, is given effect as if originally authorized by him." *In re Dwek*, Nos. 07-11757, 07-1616, 07-1697, 2010 Bankr. LEXIS 1859, at *10–11 (Bankr. D.N.J. June 1, 2010) (quoting *Martin*

*Glennon, Inc. v. First Fid. Bank, N.A.*, 279 N.J. Super. 48, 60 (App. Div. 1995)). It, too, is not a cause of action; it is a theory of agency. *Id.*

*Res ipsa loquitur* (Count 20) is a rule of evidence by which certain facts may warrant an inference of negligence; it is not an independent cause of action. *Fassbinder v. Pa. R.R. Co.*, 322 F.2d 859, 861 (3d Cir. 1963); *Wilson v. Consol. Rail Corp.*, Nos. 12-7586, 13-410, 13-721, 13-761, 13-784, 2013 U.S. Dist. LEXIS 143776, 21–22 (D.N.J. Oct. 4, 2013).

Punitive damages (Count 21) are a remedy—not a cause of action. *See Hassoun v. Cimmino*, 126 F. Supp. 2d 353, 372 (D.N.J. 2000).

Because the plaintiff has offered no substantial arguments in response to the motion to dismiss these counts, and because in any event they fail to state a claim upon which relief can be granted, Counts 14, 16, 20, and 21 are dismissed.

## IV. Conclusion

For the reasons set forth above, the defendants' motions to dismiss are **GRANTED** in part and **DENIED** in part. The motion to dismiss is **DENIED** as to (1) the hostile work environment claim under Title VII (Count 3), as against Verizon only; and (2) the claim for intentional infliction of emotional distress (Count 9). The motion to dismiss is otherwise **GRANTED**. These dismissals are without prejudice to the submission, within 30 days, of a properly supported motion to amend the complaint.

A separate order will issue.

Dated: September 20, 2019

**Hon. Kevin McNulty**
**United States District Judge**